CWIKLO LAW FIRM
DAVID PETER CWIKLO, SBN 114118
WARNER CENTER TOWERS
21650 OXNARD STREET • SUITE 1960
WOODLAND HILLS, CALIFORNIA 91367
TELEPHONE (818) 719-8000 • FACSIMILE (818) 719-9009
dpcwiklo@aol.com • dpclaw@yahoo.com

**ATTORNEYS FOR PLAINTIFF        ANA GUARDADO**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA GUARDADO, ) | CASE NUMBER: 2:22-cv-05515 |
| ) | |
| PLAINTIFF, ) | **PLAINTIFF ANA GUARDADO'S** |
| ) | **COMPLAINT FOR DAMAGES** |
| VS. ) | |
| ) | 1. **NEGLIGENCE** |
| UNITED STATES OF AMERICA, ) | [DANGEROUS CONDITION |
| TRANSPORTATION SECURITY ) | OF PUBLIC PROPERTY]; |
| ADMINISTRATION (TSA), ) | |
| A DIVISION OF HOMELAND ) | 2. **PREMISES LIABILITY** |
| SECURITY, CITY AND COUNTY ) | [DANGEROUS CONDITION |
| OF DENVER, DBA DENVER ) | OF PUBLIC PROPERTY]. |
| INTERNATIONAL AIRPORT, ) | _____ |
| ) | |
| DEFENDANTS. ) | **DEMAND FOR JURY TRIAL** |
| ) | _____ |
| _____ ) | |

Plaintiff Ana Guardado, files her Complaint for Damages and Demand for Jury Trial wherein she alleges as follows:

**BRIEF STATEMENT OF THE CASE**

1.      This is a tort, negligence and premises liability, dangerous condition of public property action brought by business invitee plaintiff Ana Guardado, age 54,

- 1 -

against defendants based upon defendants' prior notice and/or knowledge of a dangerous condition of public property within the Denver International Airport, Elrey B. Jeppersen Terminal ("DIA"), including the second Transportation Security Administration ("TSA") Checkpoint screening area, where TSA Transportation Security Officers ("TSOs") controlled, monitored, supervised, secured, protected, processed 59,000,000 annual DIA travelers through the various TSA Security Checkpoints.

2.    On August 8, 2021, plaintiff Ana Guardado, age 54, arrived at the Denver International Airport at approximately 6:30 p.m. prior to her scheduled 9:25 p.m. departure.  Guardado passed through the first TSA Security Checkpoint, where she was directed to the second TSA Security Checkpoint.  TSA Security Officers directed Guardado to remove her shoes, went through the full-body scanner, put on her shoes, then waited for her single carry-on luggage to pass through the luggage screener.  Due to the high-volume of travelers, Transportation Security Officers repeatedly urged travelers, including Guardado, to *" ... hurry it up ... move it along ... keep the line moving ... you have a lot of people behind you."*  After Guardado's single carry-on luggage passed through the screener, Guardado grabbed her luggage, set the rollers on the ground, raised the luggage handle, turned, took one step, then two steps, when she suddenly fell forward in the TSA Security Checkpoint area, landed on her right knee, then left knee, then planted her face directly into the improperly constructed, installed, inspected and maintained terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries.

## JURISDICTION, VENUE

3.    **Subject Matter Jurisdiction.**  This action was brought pursuant to the Federal Torts Claims Act (FTCA) and 28 U.S.C. §2671, an action in tort for personal injuries suffered by plaintiff Guardado which were caused by the negligent acts and

-------------------------------------------------------------------------------------------------------------
PLAINTIFF ANA GUARDADO'S
COMPLAINT FOR DAMAGES ▪ DEMAND FOR JURY TRIAL

omissions of defendants, their agents and employees.

4.      Pursuant to the FTCA, the Government's sovereign immunity to civil suits seeking money damages was waived "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of anu employees of the Government while acting within the course and scope of their employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §2672; 28 U.S.C. §1346(b)(1).

5.      The FTCA provides the basis for liability of the federal government, including departments and agencies, for such negligence.  28 U.S.C. §1346(b)(1); 29 U.S.C. §2674.

6.      **Venue.**  Venue is proper in the United States District Court, Central District of California, pursuant to 28 U.S.C. §1391(b)(2); 28 U.S.C. §1391(e).

### PARTIES

7.      Plaintiff Ana Guardado, age 54, is a resident of the City of Los Angeles, Los Angeles County, State of California.

8.      Defendant United States of America, is a sovereign nation and exists under the Constitution and the laws enacted by the United States Congress.  The Department of Homeland Security has a component identified as the Transportation Security Administration ("TSA"), thus defendant United States of America has authority over TSA's practices and policies who was responsible for ensuring compliance with all legal requirements regarding security services, traveler and luggage screening, airport crowd control provided at the Denver International Airport, located at 8500 Pena Boulevard, Denver, Colorado 80249.  At all times herein TSA was an agency of defendant United States of America, organized and existing under the laws of the United States of America and the United States Constitution.

9.      Defendant City and County of Denver, dba Denver International Airport ("DIA"), had its principal place of business located at 8500 Pena Boulevard, Denver,

--------------------------------------------------------------------------------
PLAINTIFF ANA GUARDADO'S
COMPLAINT FOR DAMAGES ▪ DEMAND FOR JURY TRIAL

Colorado 80249.  The Denver International Airport ("DIA") had an estimated 35,000 employees, considered the third busiest airport in the world, considered the third busiest airport in the United States by volume of passenger traffic, with an estimated annual traveler traffic of 59,000,000.  Defendants City and County of Denver owned, operated, constructed, supervised and maintained Denver International Airport, who was responsible for the construction, maintenance and inspection of the DIA property and premises, including all pedestrian traveler walkways, floors and floor covering located within the DIA, including the walkways, floor, floor covering at issue in this case.

## STATEMENT OF FACTS
## APPLICABLE TO ALL CAUSES OF ACTION

10.    **Business Invitee Guardado.**  On Sunday, August 8, 2021, Ana Guardado, age 54, was a business invitee, a traveler at the Denver International Airport property and premises.  Previously, Guardado flew from Los Angeles, California, to Denver, Colorado, to visit her adult son, a United States Army Sergeant, stationed at the nearby Fort Carson Army base, prior to his deployment to the Al Asad Airbase, an Iraqi Armed Forces and United States Armed Forces base located on Al Anbar Governorate (province) located in Western Iraq.  On August 8, 2021, Guardado arrived at the Denver International Airport at approximately 6:30 p.m., which was approximately 3-hours prior to her 9:25 p.m. scheduled departure for her return trip to Los Angeles, California.

11.    **Lengthy TSA Security Checkpoint Lines.**  Sunday, August 8, 2021, was an extremely busy, high-volume, air travel day at the Denver International Airport. Guardado spent a significant time in the two separate TSA Security Checkpoint lines due to the high-volume of DIA travelers due to the grossly understaffed, mismanaged, untrained TSA Security Officers who were unable to promptly process the disproportionate high-volume of travelers through the TSA Security Checkpoints without significant delay.

- 4 -

---

12.      **TSA Transportation Security Officers Hurried, Rushed Guardado.**
TSA Transportation Security Officers rushed DIA travelers, including Guardado to the
first TAS Security Checkpoint.  In loud voices, TSA Security Officers told the lengthy
line of travelers to, *" … hurry it up ... move it along ... keep the line moving ... you have
a lot of people behind you.*"  Guardado eventually proceeded to the first TSA Security
Checkpoint.  After Guardado showed her identification and departure boarding pass
ticket, TSA Security Officers directed Guardado to the second TSA Security
Checkpoint line, for her full-body screening, as well as the luggage screening of her
single carry-on luggage.

After another lengthy delay, Guardado proceeded to the second TSA Security
Checkpoint.  Guardado was ordered by TSA Security Officers to remove her shoes,
which were passed through the luggage screener.  Guardado was screened by the TSA
full-body screening device.  On the other side of the luggage screening device,
Guardado put on her shoes.  Guardado waited for her single carry-on luggage to be
screened.  Again, TSA Transportation Security Officers hurried and rushed Guardado
when they instructed her to, *" … hurry it up ... move it along ... keep the line moving ...
you have a lot of people behind you.*"  The tone and attitude of these TSA Security
Officers insinuated DIA travelers (business invitees), including Guardado, caused the
lengthy traveler and luggage screening delays, the long lines.  Guardado heard these
TSA Security Officers make these statement to rush DIA travelers through the second
TSA Security Checkpoint on more than one occasion as she waited for her luggage to
be screened.  It appeared the TSA's understaffed, mismanaged, untrained TSA
Officers, agents and employees were responsible for the extraordinary length of the
DIA traveler lines, not the DIA travelers.

13.      **Understaffed, Mismanaged, Untrained TSA Officers, Officers,
Employees.**  It was the TSA's understaffed, mismanaged and untrained TSA Security
Officers, agents and employees, in the face of this high-volume of DIA travelers who
caused the extraordinary lengthy lines, the extraordinary lengthy traveler delays.  The

understaffed, mismanaged, untrained TSA Security Officers were unable to promptly process the disproportionate high-volume of travelers.  The negative tone, the negative attitude of the understaffed, mismanaged and untrained TSA Security Officers towards the DIA travelers, their rush of DIA travelers through the screening checkpoint, including Guardado, was not necessary, not warranted had the TSA been properly staffed, managed and trained to process this high-volume of travelers.

14.    **Dangerous Condition of Public Property.**  After Guardado's single carry-on luggage passed through the screener, Guardado grabbed her luggage, set the rollers on the ground, raised the luggage handle, turned, took one step, then two steps, when she suddenly fell forward in the TSA Security Checkpoint area, landed on her right knee, then left knee, then planted her face directly into the improperly constructed, installed, inspected and maintained terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or which caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries.

15.    The force of Guardado's facial impact into the covered terrazzo floor surface caused Guardado to momentarily lose consciousness.  Stunned, Guardado laid on the ground in pain.  Multiple defendant agents and employees approached Guardado and began to film the visibly dazed, stunned Guardado on the ground.  With their iphones video recording devices, couple with their overhead surveillance cameras, multiple agents and employees asked Guardado if she needed help to get up, asked if she needed medical assistance, repeatedly asked her, "*Are you running late for your flight.  Are you late for your flight?*"  These comments were highly offensive and inappropriate, their effort to try to solicit some sort of liability admission of guilt from the visibly bewildered, dazed, confused and injured Guardado, to try to get Guardado to implicate herself for causing her own sudden fall, her own serious injuries because "she was in a hurry," with no sincere concern for Guardado's health and well-being.

- 6 -

----------------------------------------------------------------------------------------------------

PLAINTIFF ANA GUARDADO'S
COMPLAINT FOR DAMAGES ▪ DEMAND FOR JURY TRIAL

Guardado was not running late.  Guardado was rushed by TSA Security Officer through the security checkpoint.  It was defendant DIA who improperly installed, inspected, maintained the terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or which caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries. It was defendant TSA who was understaffed, mismanaged, untrained to process this high-volume of DIA travelers through the second TSA Security Checkpoint, as evidenced by the extraordinary length of the DIA travelers lines.

16.    The visibly stunned, dazed Guardado told TSA Security Officers she was not feeling well.  Guardado told TSA Security Officers she arrived at the DIA at least 3-hours early, that her flight was not for another 2-hours.  Guardado dispelled any notion she caused her own fall, her own injuries because she was "rushing because she was late for her flight."  Dazed and in extreme pain, Guardado slowly stood up, slowly limped over to a nearby pedestrian bench, where she sat down and to collect her composure.  The dazed, injured Guardado eventually gathered herself and slowly headed towards her departure gate.

17.    At all relevant times herein Guardado acted reasonably under the circumstances, as directed by TSA Security Officers at the Denver International Airport, who was not comparatively at fault.  Guardado did not suffer from any pre-existing physical or emotional condition which caused and/or contributed to her August 8, 2021 fall and resultant serious and permanent injuries.

18.    **DIA Flooring, Floor Covering.**  The DIA's flooring surface had the appearance of a marble, granite-like surface which covered the concrete floor surface at the second TSA Security Checkpoint area, which appeared to be a terrazzo flooring, i.e., a marble, quartz, glass or other suitable chips, sprinkled or unsprinkled, then poured with a binder that bonds to the concrete floor surface, which was supposed to be cured, ground and polished to a smooth surface or otherwise finished to produce a

uniformly textured surface.  The DIA floor surface included complex shapes, patterns.

19.    **DIA's Negligently Constructed, Installed, Prepared, Maintained Floor Surface, Floor Covering.**  On August 8, 2021, the DIA floor surface and floor covering at the second TSA Security Checkpoint area was an improperly constructed, installed, inspected and maintained defective terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or which caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries.

20.    **TSA's Negligently Understaffed, Mismanaged, Untrained Security.**  On August 8, 2021, TSA was understaffed, mismanaged and untrained to be able to promptly process high volume of DIA travelers, which produced significantly lengthy traveler lines.  Due to TSA's understaffing, mismanaged and untrained workforce at DIA, the TSA Security Officers, in their hostile, negative tone, demeanor and attitude during the screening process, hurried, rushed DIA travelers, including Guardado, to *" ... hurry it up ... move it along ... keep the line moving ... you have a lot of people behind you,"* which combined with the floor surface and the floor surface covering which caused a dangerous condition of public property which cause her to suddenly trip and fall at the second TSA Checkpoint screening area, which constituted an unreasonably dangerous condition of public property, a significant risk to the health and safety for those DIA travelers expected to use the walkway and walking surface, including Guardado.

21.    **Defendants' Prior Notice, Knowledge of Dangerous Condition of Public Property.**  Defendants DIA and TSA had prior notice of or in the exercise of reasonable and ordinary care should have known of their floor, floor covering and understaffing, mismanagement and untrained workforce was a dangerous condition of public property.  Defendant DIA should have remedy, repaired, removed or warned travelers of their defective flooring and floor covering.  Defendant TSA should have

---

PLAINTIFF ANA GUARDADO'S
COMPLAINT FOR DAMAGES ▪ DEMAND FOR JURY TRIAL

had additional, properly managed, properly trained Security Officers at the TSA
Security Checkpoint screening area to properly address the high-volume of traveler
traffic that Sunday evening.  Defendants did not.  Defendant DIA's failure to use
reasonable and ordinary care to remedy, repair, remove or warn travelers of the
defective floor and floor covering was a dangerous condition of public property.
Defendant TSA's failure to use reasonable and ordinary care when they rushed
travelers through the Security Checkpoints was a dangerous condition of public
property.  Defendants' dangerous condition of public property substantially and
proximately caused those serious and permanent injuries sustained by Guardado.
Guardado is informed and believes the floor covering has since been remedy, repaired
and/or removed to prevent future DIA travelers from sustaining the same or
substantially similar fall incident sustained by Guardado.

     22.    **Guardado's Serious, Permanent Injuries.**  Guardado sustained serious
and permanent physical and emotional injuries which included but was not limited to
the following:

        (1)    sudden, violent, blow to right knee;

        (2)    right knee, contusion, bruising, swelling;

        (3)    right knee, probable internal derangement; still being assessed;

        (4)    right knee, contusion to femur, patella, tibia, anterior cruciate
ligament, medial collateral ligament, patellar tendon ligament,
due to violent blow;

        (5)    sudden, violent, blow to left knee;

        (6)    left knee, contusion, bruising, swelling;

        (7)    sudden, violent, blow to face, head, nasal bone, below glabella,
below procerus (face plant); bruising, swelling;

        (8)    closed head trauma, concussion, traumatic brain injury (tbi);

        (9)    frontal cerebral coup (blow) injury (primary, initial impact,
injury);

(10)  occipital, cerebellum cerebral contrecoup (counter blow) injury, brain collided ("ricocheting effect") with back of skull (back-and-forth, secondary impact, injury);

(11)  cerebral contusion; cerebral adhesions; cerebral swelling; cerebral ischemia (reduction of blood flow);

(12)  brain impacted into dura, cerebral spinal fluid (CSF), causing bruising, swelling (blood) between brain, dura, skull;

(13)  stretching, tearing of cerebral nerve fibers, throughout brain;

(14)  cerebral nerve fiber tears, blockage and/or chemical change which reduced blow flow and oxygenation of the brain cells;

(15)  cerebral nerve fiber tears, which causes microglial scarring, resulting in degeneration of the nerve processes distal to the site of the tears,  negatively impacted brain function;

(16)  brief loss of consciousness;

(17)  feeling mentally "foggy," "groggy," "hazy," "slow";

(18)  dazed, stunned, startled, confused;

(19)  nausea;

(20)  difficulty breathing;

(21)  difficulty concentrating;

(22)  vertigo, dizziness, loss of balance, loss of coordination;

(23)  chronic, frequent headaches;

(24)  unnatural pressure in head;

(25)  sensitivity bright lights;

(26)  feeling tired, no energy, fatigue;

(27)  "does not feel right";

(28)  emotional distress, anxiety, nervousness, worry;

(29)  post-traumatic stress disorder;

(30)  irritability.

- 10 -

This list is not complete and remains subject to discovery in the underlying action, as well as testimony and documentary evidence as may be presented to the court at the time of jury trial.

23. **Guardado's Claim for Damages.**  By this action, business invitee Guardado seeks damages for her economic and noneconomic losses.  The exact amount of Guardado's claim for medical expenses, past and future, lost earnings, past and future, lost career, lost promotional opportunities, past and future, loss of retirement benefits, past and future, loss of reputation, past and future, general damages, past and future, as well as attorney's fees, as permitted by law, which on May 19, 2022, Guardado had previously identified in her Administrative Claim was the amount of $5,000,000 (five million dollars), which will be shown according to proof at the time of trial.  Guardado reserves the right to amend this description of the defendants' acts, errors and omissions, as well as her damages, upon receipt of further information not currently possessed or inadvertently omitted herein, according to proof.

## ADMINISTRATIVE PREREQUISITES

24. On January 31, 2022, plaintiff Guardado previously complied with her pre-lawsuit administrative prerequisites pursuant to 28 U.S.C. §2671, *et seq.,* of Chapter 171, Title 28 of the United States Code, with the service of her *Notice of Claim Against Governmental Entity* administrative claim pre-filing prerequisites.  On March 2, 2022, the City and County of Denver issued a response which did not constitute a "final decision" but sought additional information.  On February 15, 2022, the Transportation Security Administration acknowledged receipt of Guardado's claim submission, issued a response which did not constitute a "final decision" but sought additional information.  Moreover, on May 19, 2022, plaintiff Guardado served her *First Amended Notice of Claim Against Governmental Entity* which included a response to the additional information sought.  On May 23, 2022, the Transportation Security Administration acknowledged receipt of Guardado's further submission, a response which did not constitute a "final decision."  In plaintiff Guardado's efforts to

- 11 -

1  timely preserve her claims according to the statute of limitations applicable to her case,

2  she timely filed the instant Complaint for Damages and Demand for Jury Trial.

3  ## INCORPORATION OF ALLEGATIONS

4  25.    All of the allegations in each of the foregoing paragraphs are incorporated

5  herein by this reference as if fully set forth in each and every cause of action herein.

6  ## FIRST CAUSE OF ACTION

7  ## NEGLIGENCE

8  ## DANGEROUS CONDITION OF PUBLIC PROPERTY

9  (As Against All Defendants)

10  26.    At all times relevant to the subject matter of this litigation, defendants City

11  and County of Denver ("CCD") owned, constructed, installed, inspected, operated,

12  supervised and maintained the Denver International Airport ("DIA").  DIA was

13  responsible for the construction, installation, inspection and maintenance of the

14  premises and property, including floors, walkways, walkway surfaces and floor

15  coverings located within DIA, including the common walkway areas and walking

16  surfaces located at and near the second TSA Security Checkpoint, where the DIA

17  traveler full-body screening and carry-on luggage screening occurred.

18  27.    On August 8, 2021, defendant DIA owed a duty of due care to their

19  business invitees, including Guardado, to maintain the Denver International Airport

20  premises, including the common traveler walkway areas, walking surface areas and

21  floor coverings located at and near the second TSA Security Checkpoint station in a

22  reasonably safe condition, without unreasonably exposing them to an unreasonable,

23  dangerous threat and risk of harm to the traveler's health and safety.  When a public

24  entity provides public property for public use, it owes a non-delegable duty to protect

25  invitee from an unreasonable risk to their health and safety due to a negligent act or

26  omission in constructing or maintaining the public property.  Defendants cannot

27  delegate this responsibility to another.

28

---

28.     On August 8, 2021, defendant TSA owed a duty of due care to the DIA business invitees, including Guardado, to reasonably and safely process DIA travelers through their various TSA checkpoint, including the common traveler walkway areas, walking surface areas and floor coverings located at and near the second TSA Security Checkpoint station in a reasonably safe condition, without unreasonably exposing them to an unreasonable, dangerous threat and risk of harm to the traveler's health and safety.

29.     **Dangerous Condition of Public Property.**  After Guardado's single carry-on luggage passed through the screener, Guardado grabbed her luggage, set the rollers on the ground, raised the luggage handle, turned, took one step, then two steps, when she suddenly fell forward in the TSA Security Checkpoint area, landed on her right knee, then left knee, then planted her face directly into the improperly constructed, installed, inspected and maintained terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or which caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries.

30.     **DIA's Negligently Constructed, Installed, Prepared, Maintained Floor Surface, Floor Covering.**  On August 8, 2021, the DIA floor surface and floor covering at the second TSA Security Checkpoint area was an improperly constructed, installed, inspected and maintained defective terrazzo floor surface, which was covered by the improperly installed, inspected and maintained floor covering, which concealed the defective floor surface and/or which caused Guardado to trip and fall which resulted in a serious and permanent lower extremity, closed head, traumatic brain injury and related injuries.

31.     **TSA's Negligently Understaffed, Mismanaged, Untrained Security.**  On August 8, 2021, TSA was understaffed, mismanaged and untrained to be able to promptly process high volume of DIA travelers, which produced significantly lengthy

- 13 -

traveler lines.  Due to TSA's understaffing, mismanaged and untrained workforce at DIA, the TSA Security Officers, in their hostile, negative tone, demeanor and attitude during the screening process, rushed DIA travelers, including Guardado, to *" ... hurry it up ... move it along ... keep the line moving ... you have a lot of people behind you,"* which combined with the floor surface and the floor surface covering which caused a dangerous condition of public property which cause her to suddenly trip and fall at the second TSA Checkpoint screening area, which constituted an unreasonably dangerous condition of public property, a significant risk to the health and safety for those DIA travelers expected to use the walkway and walking surface, including Guardado.

32.     **Defendants' Prior Notice, Knowledge of Dangerous Condition of Public Property.**  Defendants DIA and TSA had prior notice of or in the exercise of reasonable and ordinary care should have known of their floor, floor covering and understaffing, mismanagement and untrained workforce was a dangerous condition of public property.  Defendant DIA should have remedy, repaired, removed or warned travelers of their defective flooring and floor covering.  Defendant TSA should have had additional, properly managed, properly trained Security Officers at the TSA Security Checkpoint screening area to properly address the high-volume of traveler traffic that Sunday evening.  Defendants did not.  Defendant DIA's failure to use reasonable and ordinary care to remedy, repair, remove or warn travelers of the defective floor and floor covering was a dangerous condition of public property. Defendant TSA's failure to use reasonable and ordinary care when they rushed travelers through the Security Checkpoints was a dangerous condition of public property.  Defendants' dangerous condition of public property substantially and proximately caused those serious and permanent injuries sustained by Guardado. Guardado is informed and believes the floor covering has since been remedy, repaired and/or removed to prevent future DIA travelers from sustaining the same or substantially similar fall incident sustained by Guardado.

---------------------------------------------------------------------------------------------------------------------
PLAINTIFF ANA GUARDADO'S
COMPLAINT FOR DAMAGES ▪ DEMAND FOR JURY TRIAL

33.     Defendant CCD and DIA breached their duty of due care to their business invitees, including Guardado, when they failed to construct, inspect, operate, supervise and maintain the common walkway areas, walking surfaces areas and floor covering located at and near the second TSA Security Checkpoint in a reasonably safe condition, which was an unsafe and dangerous condition of public property, dangerous to pedestrian travelers, including Guardado.

34.     Defendant TSA breached their duty of due care to their business invitees, including Guardado when they failed to have adequate staffing, properly managed, properly trained Security Officers who did not properly maintain crowd control, did not properly process the huge volume of DIA travelers through their Security Checkpoints in a reasonably safe condition which was an unsafe and dangerous condition of public property, dangerous to travelers, including Guardado.

35.     Defendants knew or in the exercise of reasonable and ordinary care should have known this TSA Security Checkpoint common walkway, walking surface and floor covering was a dangerous condition of public property.

36.     Moreover, defendants failed to exercise reasonable care when that they did not adequately staff, manage or train those who were responsible for maintaining the common walkways in a reasonably safe condition.

37.     Defendants failed to exercise reasonable care when they failed to warn pedestrian travelers, including Guardado, of the unsafe and hazardous conditions of the common walkway, walking surface and floor covering at the second TSA Security Checkpoint premises.

38.     Defendants' breach of their duty of due care to their business invitees, including Guardado, by their failure to construct, inspect, operate, supervise and maintain the common walkway areas, walking surfaces and floor covering located at and near the second TSA Security Checkpoint in a reasonably safe condition, failed to warn of any hazards or defects, which was a direct and proximate cause of those serious and permanent injuries sustained by Guardado as identified herein.

- 15 -

**SECOND CAUSE OF ACTION**

**PREMISES LIABILITY**

**DANGEROUS CONDITION OF PUBLIC PROPERTY**

(As Against Defendant City and County of Denver, Only)

39.     At all times relevant to the subject matter of this litigation, defendants City and County of Denver, dba Denver International Airport, owned, constructed, operated, supervised and maintained Denver International Airport, who was responsible for the construction of the floor surface, the inspection, operation, supervision and maintenance of the common walkway, walking surface and floor coverings located at the second TSA Security Checkpoint, including the common walkway areas and walking surfaces.

40.     Defendants remain liable to plaintiff Guardado because they had an ownership interest in the DIA property, as well as the second TSA Security Checkpoint common walkway area, walking surface and floor covering.  Defendant had an obligation to Guardado, a business invitee on the premises, where an invitee may recover damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which were actually known or through the exercise of reasonable care should have known.

41.     On August 8, 2021, defendant owed a duty to DIA travelers, including Guardado, a business invitee on the premises, to: (a) reasonably construct, install, inspect and maintain DIA's terrazzo floor surface and floor surface covering at the second TSA Checkpoint in a reasonably safe condition to avoid the risk of serious and permanent injury to DIA travelers; (b) to inspect, operate, supervise and maintain the DIA floor and floor covering(s) in a reasonably safe condition; (c) to reasonably maintain and control DIA traveler traffic on the premises in a reasonable and safe condition; (d) to warn business invitees of any: (i) defective floor surface; defective floor covering, the improper construction, installation, inspection and maintenance of the DIA common walkway area, walking surface and floor covering over the floor

- 16 -

surface which presented an unreasonable risk of injury DIA travelers.

42.     At all times herein defendants CCD and DIA knew and/or in the exercise of reasonable and ordinary care should have known of the dangerous condition of public property which was not safe for business invitee's use.  Guardado was a business invitee.  The second TSA Security Checkpoint area's negligently constructed, installed, inspected and maintained floor surface, as well as the floor covering itself which concealed any floor defects, was allowed to exist for a period of time for which sufficient inspection would have reasonably disclosed.

43.     Each defendant, who acted through their agents and employees, was negligent in its ownership, construction, installation, inspection, operation, supervision and maintenance of the second TSA Security Checkpoint common walkway area, floor surface and floor covering, which concealed the floor defect, where both the floor as well as the floor covering created was a defective and dangerous condition of public property which posed an unreasonable risk of injury to unsuspecting DIA travelers, including Guardado, caused Guardado's fall and resulting serious and permanent injuries.  Guardado is informed and believes the floor covering has since been remedy, repaired and/or removed to prevent future DIA travelers from sustaining the same or substantially similar fall incident sustained by Guardado.

44.     On August 8, 2021, defendants owed a duty of due care to their business invitees, including Guardado, to maintain the Denver International Airport premises, including the common walkway areas and walking surfaces located at and near the second TSA Security Checkpoint, in a reasonably safe condition, without exposing travelers, including Guardado to an unreasonable threat and hazard to the traveler's health and safety.  Premises owner defendants cannot delegate this responsibility.

45.     Defendants breached their duty of due care to their business invitees, including Guardado, when they failed to construct, install, inspect and maintain the common walkway areas, walking surfaces and floor covering(s) at and near the second TSA Security Checkpoint in a reasonably safe condition.

- 17 -

46.     Defendants' breach of their duty of due care to their business invitees, including Guardado, by their failure to construction, install, inspect and maintain the common walkway areas and walking surfaces located at and near the second TSA Security Checkpoint in a reasonably safe condition was a direct and proximate cause of Guardado's serious and permanent injuries identified herein.

### DAMAGES

(All Causes of Action)

47.     Guardado seeks economic and non-economic damages, including severe and extreme emotional distress, which includes physical/emotional healthcare and treatment, suffer severe and extreme emotional distress, worry, humiliation, mental anguish, anxiety, loss of enjoyment of life, loss of income and future earning capacity, past and future, as well as attorney's fees to the extent permitted by law, damages in excess of the minimal jurisdiction limits of the County and/or United States District Court, the full nature and extent according to proof at trial.

### PRAYER

Wherefore, plaintiff Ana Guardado prays for judgment as follows:

48.     For economic and noneconomic damages, past and future;

49.     For attorney's fees and costs, to the extent permitted by law

50.     For prejudgment interest, to the extent permitted by law;

51.     For such other and further relief as this Court may deem just and proper.

Dated:  August 5, 2022                          CWIKLO LAW FIRM

DAVID PETER CWIKLO
Attorneys for Plaintiff
ANA GUARDADO

- 18 -

## DEMAND FOR JURY TRIAL

Plaintiff Ana Guardado hereby demands her case to tried to a jury.

Dated:  August 5, 2022                              CWIKLO LAW FIRM

                                                   DAVID PETER CWIKLO
                                                   Attorneys for Plaintiff
                                                   ANA GUARDADO

- 19 -